UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-76-FDW

| | |
|---|---|
| CHRISTOPHER ANTHONY JUDD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| BILLY WATKINS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Fourth Amended Complaint, (Doc. No. 45).[1] Plaintiff is proceeding *in forma pauperis*, (Doc. No. 9).

## I. BACKGROUND

*Pro se* Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 while a pretrial detainee at the Buncombe County Detention Facility ("BCDF").[2] He names as Defendants: John Doe Sheriff of the Buncombe County Sheriff's Office, Buncombe County, the State of North Carolina, Deputy Billy Watkins, Dr. Daniel Hayes, Jane Doe Mental Healthcare Provider, and John Doe Deputy Sheriff. Plaintiff alleges that the incidents at issue occurred at BCDF on November 11, 2016 at 4:00 PM and 5:30 AM, on November 13, 2016 at 10:30 AM and in March, April, May, June, and July 2016.

Construing the Fourth Amended Complaint liberally and accepting the allegations as true,

---

[1] The Court issued an Order on October 18, 2019, stating that the Amended Complaint, (Doc. No. 10), is the operative pleading. See (Doc. No. 44). Meanwhile, Plaintiff filed his Fourth Amended Complaint pursuant to the prisoner mailbox rule and it was docketed before the Court's October 18 Order was entered. The Fourth Amended Complaint is now the operative pleading and it will now be screened on initial review.

[2] Plaintiff has now been convicted and sentenced and his address of record is at the Neuse Correctional Institution. See (Doc. No. 45 at 5);

1

John Doe Deputy Sheriff arrested Plaintiff as a result of a domestic disturbance. He observed Plaintiff's psychological distress and heard Plaintiff threaten suicide and was deliberately indifferent by failing to communicate the circumstances of his arrest and strong likelihood that Plaintiff would attempt suicide to BCDF.

Deputy Hayes and Jane Doe conducted only cursory interview after Plaintiff's arrest during intake. Despite their specific knowledge of Plaintiff's suicidal tendencies and serious psychological needs, including the need for anxiety and insomnia medication, they failed to respond reasonably by placing him on suicide watch or implementing any plan for his supervision. As a result, Plaintiff hung himself using a sheet and nearly died.

On the morning of November 11, 2016 during medical intake, Plaintiff signed a form stating he would release BCDF from liability for medical costs incurred as a result of self-injurious behavior. Plaintiff does not believe the form has any legitimate governmental purpose and that the form's existence encouraged BCDF deputies to ignore the risk of substantial injury that was posed by Plaintiff's known suicidal tendencies. This municipal policy is deliberately indifferent to the health and safety of others and may be intended to deceive people who sign the form into believing that they have forfeited their right to recover damages, which infringes on their right of access to the courts.

Sometime after midnight on November 13, 2016, Plaintiff informed Deputy Watkins of his need to be seen by medical for serious withdrawal symptoms and chest pain. He asked if Plaintiff had informed medical on intake and Plaintiff said he did not know. Watkins said he was not calling medical. Plaintiff began kicking the door, screaming obscenities, and asking for medical attention for several hours. Plaintiff was refused medical attention and was placed on lockdown. Plaintiff told Watkins "it's gonna be on you when I do something stupid and you find me dead in here."

(Doc. No. 45 at 8). Plaintiff was deliberately indifferent to Plaintiff's suicide threat and failed to take any actions to protect him and subjected him to cruel and unusual punishment by witnessing Plaintiff's distress and failed to respond reasonably.

Plaintiff repeatedly attempted to obtain mental health treatment throughout 2016 for anxiety, insomnia, paranoid thoughts, and other serious mental health issues. Nurse Jane Doe knew that Plaintiff had been prescribed medications and had suicidal tendencies but she intentionally and recklessly disregarded a risk of serious harm by intentionally withholding his medications and refusing him access to a psychiatrist. Plaintiff did not receive adequate mental healthcare in the form of medication or counseling at any time during his confinement in 2016. This resulted in worsening psychological symptoms, extreme loss of vital signs requiring emergency transport, acute respiratory failure, neurological critical condition, damage to his neck, rib fracture, and general distress. This resulted in a 10-day stay in the Neurotrauma ICU, nearly three months of pain, and hypoxic brain injury. He now has acutely impaired memory function, permanent psychological damage, and PTSD.

Buncombe County failed to provide adequate healthcare and is deliberately indifferent to the safety of others through its policy of understaffing mental health professionals. Nurse Jane Doe was the only mental health counselor available from 2010 to 2016. Buncombe County also failed to exercise necessary oversight to ensure the provision of adequate mental healthcare where Jane Doe was refusing minimally adequate treatment. Buncombe County failed to adequately train and supervise its employees to communicate suicide risks, follow suicide prevention policies, and recognize and respond to mental health crises. Buncombe County Sheriff Van Duncan[3] was aware

---

[3] The current Buncombe County Sheriff is Quentin Miller.

of these deliberately indifferent policies and nevertheless failed to respond reasonably to prevent serious harm and pain and suffering.

Plaintiff seeks injunctive relief, and compensatory and punitive damages.

## II.     SCREENING STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## IV. DISCUSSION

### (1) Parties

In order to successfully allege a violation of 42 U.S.C. § 1983, the plaintiff must allege that a "person" acting under the color of state law violated the plaintiff's constitutional rights.

The Eleventh Amendment bars suits directly against a state or its agencies unless the state has waived its immunity or Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). Congress has not imposed § 1983 liability upon states, and the state of North Carolina has done nothing to waive its immunity. Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989) (citing McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987)).

The claims against the State of North Carolina will therefore be dismissed pursuant to § 1915(e)(2)(B)(ii) and it will be terminated as a Defendant in this action.

### (2) Cruel and Unusual Punishment

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from

5

inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). To establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) "the deprivation of [a] basic human need was objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted).

Because Plaintiff was an arrestee and pre-trial detainee at the relevant times, his deliberate indifference claim is properly brought under the Fourteenth Amendment, rather than the Eighth Amendment, but the analysis is the same. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); see also Martin v. Gentile, 849 F.2d 863 (4th Cir. 1988) (applying the Fourteenth Amendment to an arrestee's deliberate indifference claim); but see Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473, 2475 (2015) (holding that the test for excessive force claims brought by pretrial detainees under the Fourteenth Amendment differs from the test for excessive force claims brought by convicted prisoners under the Eighth Amendment); see Lanier v. Henderson Cnty. Det. Ctr., 2016 WL 7007537 at *2, n. 3 (W.D.N.C. Nov. 29, 2016) (noting that the Supreme Court in Kingsley did not explicitly extend the objective reasonableness standard outside the excessive

force context); see, e.g., Duff v. Potter, 665 Fed. Appx. 242, 244-45 (4th Cir. 2016) (applying the Kingsley standard to a detainee's excessive force claim but not his medical need claim).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs, including psychological needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To state a case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer, 849 F.3d at 210 (citing Iko, 535 F.3d at 241). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. "[P]rison officials have a duty to protect prisoners from self-destruction or self-injury." Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir. 1992) (quoting Lee v. Downs, 641 F.2d 1117, 1121 (4th Cir. 1981)). The key to deliberate indifference in a prison suicide case is "whether the defendants knew, or reasonably

should have known, of the detainee's suicidal tendencies." Id. (quoting Elliott v. Cheshire County, 940 F.2d 7, 10-11 (1st Cir. 1991)) (citation omitted).

Plaintiff alleges that the BCDF's intake policy encourages staff to ignore the risk of self-injury to detainees, and that, as a result of this policy, BCDF employees did nothing to prevent Plaintiff's suicide attempt even though they knew of Plaintiff's risk of self-harm. Plaintiff appears to assert this claim against Buncombe County and against Defendants Watkins and John Doe in their official capacities. An official-capacity suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)). Thus, the entity's "'policy or custom' must have played a part in the violation of federal law," Graham, 473 U.S. at 166 (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). "[T]he Eleventh Amendment does not bar a suit against a North Carolina sheriff in his official capacity…." Harter v. Vernon, 101 F.3d 334, 343 (4th Cir. 1996); see also Cash v. Granville County Bd. of Educ., 242 F.3d 219, 227 (4th Cir. 2001). Plaintiff's claim that BCDF policy resulted in inadequate healthcare and was deliberately indifferent to mental health needs is sufficient to proceed at this time.

Plaintiff further alleges that Deputy John Doe, Nurse Jane Doe, Deputy Hayes, and Deputy Watkins knew that Plaintiff's suicidal tendencies and mental health conditions placed him in a serious risk of harm and failed to take reasonable measures to protect him.[4] Plaintiff further alleges

---

[4] John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case would not be permitted). If Plaintiff is unable to provide adequate information to serve Defendant John Doe at this time, it appears that Plaintiff may be able to identify him during discovery.

8

that Nurse Jane Doe and Deputy Hayes knew that Plaintiff needed medication for his psychological conditions and failed to provide adequate care. These allegations are not frivolous on their face and will be permitted to proceed.

**(3)     Access to Courts**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…, and to petition the Government for a redress of grievances." U.S. Const. Amend I. Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that the release form he was required to sign upon entering BCDF may deceive people into thinking that they have forfeited their right to recover damages, which infringes on their right to access the courts. However, Plaintiff does not allege that he was so affected, as the instant case confirms. Plaintiff appears to be asserting a claim on behalf of others which he is prohibited from doing. Hummer v. Dalton, 657 F.2d 621, 625 (4th Cir. 1981) (prisoner's suit is "confined to redress for violations of his own personal rights and not one by him

as knight-errant for all prisoners."). Plaintiff's access to courts claim will therefore be dismissed.

V. **CONCLUSION**

For the reasons stated herein, Plaintiff's claims of cruel and unusual punishment are sufficient to proceed against John Doe Sheriff of the Buncombe County Sheriff's Office, Buncombe County, Deputy Billy Watkins, Dr. Daniel Hayes, Jane Doe Mental Healthcare Provider, and Deputy Sheriff John Doe. The State of North Carolina is dismissed as a Defendant and Plaintiff's claim of denial of access to the courts is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

**IT IS, THEREFORE, ORDERED** that:

1. The Fourth Amended Complaint, (Doc. No. 45), has passed initial review on Plaintiff's claims of cruel and unusual punishment against John Doe Sheriff of the Buncombe County Sheriff's Office, Buncombe County, Deputy Billy Watkins, Dr. Daniel Hayes, Jane Doe Mental Healthcare Provider, and John Doe Deputy Sheriff.

2. The State of North Carolina is dismissed as a Defendant and Plaintiff's claim of denial of access to the courts is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

3. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail a summons form to Plaintiff for Plaintiff to fill out and return for service of process on the **Jane Doe Mental Healthcare Provider, John Doe Deputy Sheriff, Buncombe County, and Daniel Hayes**. Once the Court receives the summons form, the Clerk shall then direct the U.S. Marshal to effectuate service on these Defendants. The Clerk is respectfully instructed to note on the docket when the form has been mailed to Plaintiff.

Signed: October 21, 2019

Frank D. Whitney
Chief United States District Judge